United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE CALDWELL,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF SAN FRANCISCO, et al.,<br><br>    Defendants. | Case No. 12-cv-01892-EDL<br><br>**ORDER ON DEFENDANTS' MOTION TO COMPEL**<br><br>Re: Dkt. No. 102 |

This is a § 1983 case brought against the City and County of San Francisco ("City") and various members of the San Francisco police department ("Officer Defendants") by Plaintiff Maurice Caldwell, who was convicted of murder in 1990 but subsequently released in December 2012 after the San Francisco Superior Court granted Plaintiff's writ of habeas corpus based on ineffective assistance of counsel. Plaintiff alleges the following claims: (1) a due process violation for using suggestive identification techniques in violation of Manson v. Brathwaite, 432 U.S. 98 (1977) and Neil v. Biggers, 409 U.S. 188 (1972) and for fabricating evidence in violation of Devereaux v. Abbey, 263 F.3d 1070 (9th Cir. 2001); (2) conspiracy to violate Plaintiff's civil rights; (3) claims against the City pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978); and (4) failure to intervene.

On January 5, 2015, Defendants filed this motion to compel the deposition of Craig Martin, Plaintiff's criminal defense attorney. Defendants argue that both Mr. Martin and Plaintiff expressly waived the attorney-client privilege by disclosing attorney-client communications in support of Plaintiff's habeas petition, noting that no protective order was sought in that case. Defendants also argue that Plaintiff has impliedly waived the attorney-client privilege by filing this lawsuit. Defendants seek an order compelling the deposition of Mr. Martin on the following topics:

    1. What Plaintiff told Mr. Martin regarding Plaintiff's involvement in the murder;

2. What Plaintiff told Mr. Martin regarding the alleged suggestive show-up;

3. Mr. Martin's decision not to challenge Mary Cobb's identification;

4. Mr. Martin's decision to defend the case not by attacking Mary Cobbs' identification, but by claiming that Plaintiff's shotgun shots did not kill Mr. Acosta;

5. Mr. Martin's decision not to investigate in any way the individuals that Plaintiff now claims perpetrated the crime;

6. Mr. Martin's decision not to call Plaintiff as a witness and to instead have Plaintiff invoke his Fifth Amendment rights; and

7. The location and handling of Mr. Martin's case file regarding this matter.

For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

**I.      DISCUSSION**

**A.      Express Waiver**

Federal Rule of Evidence 502(c) provides that when a disclosure of otherwise privileged attorney-client communications "is made in a state proceeding and is not the subject of a state-court order concerning waiver, the disclosure does not operate as a waiver in a federal proceeding if the disclosure: (1) would not be a waiver under this rule if it had been made in a federal proceeding; or (2) is not a waiver under the law of the state where the disclosure occurred." Fed. R. Evid. 502(c); see also Bittaker v. Woodford, 331 F.3d 715, 719 (9th Cir. 2003) ("An express waiver occurs when a party disclose[s] privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public."). Here, Plaintiff does not dispute that privileged communications were divulged in support of his state habeas petition without a protective order, but argues that the attorney-client privilege nevertheless applies under Federal Rule of Evidence 502(c)(1) and (2).

**1.      Whether the disclosure at issue would have constituted a waiver in a federal proceeding (Fed. R. Evid. 502(c)(1))**

There does not appear to be any controlling authority regarding whether a disclosure of privileged communications in a state court habeas proceeding without a protective order constitutes a waiver of the attorney-client privilege in a subsequent federal civil rights suit.

2

Nevertheless, two Ninth Circuit cases bear on the Court's analysis: Bittaker v. Woodford, 331 F.3d 715 (9th Cir. 2003) and Lambright v. Ryan, 698 F.3d 808 (9th Cir. 2012). Bittaker involved an appeal of a protective order issued by a federal district court in a habeas case based on ineffective assistance claims. The protective order limited the use of disclosed privileged materials to the federal habeas petition. Bittaker, 331 F.3d at 717. On appeal, the state argued that the order improperly restricted its ability to use the disclosed privileged materials in a subsequent re-prosecution of the petitioner. Id. The Bittaker court did not apply the doctrine of express waiver because the case concerned "court-ordered disclosure of privileged information," but instead applied the implied waiver doctrine. Id. at 720. The court ultimately upheld the protective order, reasoning that "[i]f a district court exercises its discretion to allow [discovery in a habeas proceeding based on ineffective assistance of counsel] . . . it must enter appropriate orders clearly delineating the contours of the limited waiver before the commencement of discovery, and strictly police those limits thereafter." Id. at 728. Lambright clarified that Bittaker applies to disclosures that take place throughout a habeas case, not just in discovery. Lambright, 690 F.3d at 820 (Bittaker's "holding extends to the entire habeas litigation, not to pretrial discovery only"); see also Salcido v. Chappell, 2012 U.S. Dist. Lexis 174800, at *4 (N.D. Cal. Dec. 10, 2012) (Chesney, J.) (same). The Lambright court also relied on the implied waiver doctrine, reasoning that because the petitioner "impliedly waived [the attorney-client privilege] when [he] filed his ineffective assistance claim . . . he could not later expressly waive the privilege by simply disclosing privileged documents without objection." Lambright, 698 F.3d at 818 at n.3.

As Defendants correctly note, Bittaker and Lambright involved criminal re-prosecutions and thus their holdings are grounded in constitutional concerns that are less relevant here where Plaintiff seeks to hold Defendants liable in a civil suit pursuant to § 1983. See Bittaker, 331 F.3d at 723-724 & n.7; Lambright, 698 F.3d at 822-23. Furthermore, at issue in Bittaker was court-ordered disclosure of privileged information; here, by contrast, Plaintiff voluntarily[1] disclosed

---

[1] However, as Bittaker notes, the disclosure of privileged communications in a habeas petition based on ineffective assistance of counsel is not entirely voluntary as the plaintiff has "no other means of protecting [her or his] legal rights." See Bittaker, 331 F.3d at 724.

3

privileged information in his habeas case without a protective order. Still, as in Lambright, the filing of Plaintiff's habeas petition based on ineffective assistance of counsel operated as an implied waiver of the attorney-client privilege. Therefore, the disclosure at issue could not have expressly waived Plaintiff's attorney-client privilege since that privilege had already been waived. See Lambright, 698 F.3d at 818 at n.3.

Defendants rely on Tennison v. City and County of San Francisco, 226 F.R.D. 615 (N.D. Cal. 2005) (Chen, J.), and Riva v. Ficco, 2014 WL 4165364 (D. Mass. Aug. 21, 2014). In Tennison, the plaintiff sued under § 1983 after he was released due to a successful habeas petition. At issue in that case were two motions to compel, one of which sought production of documents that the plaintiff claimed were protected work product from his prior criminal case. Id. at 619. The Court found an express waiver of privilege at a prior hearing on a motion for a new trial. At that hearing, plaintiff's criminal counsel testified about exculpatory information that he learned after plaintiff's conviction. Id. at 620-21. The Court held that the confidentiality of factual work product as to the attorney's investigation after plaintiff was convicted had been expressly waived. Id. at 621. However, the express waiver there appears to have occurred at a motion for a new trial, not during the habeas proceeding. Thus, the Tennison court was not presented with the situation, addressed in Lambright, where an implied waiver of privilege occurred by the filing of a habeas petition prior to any alleged express waiver during the habeas proceeding. Riva addressed whether privileged attorney-client communications disclosed during a prior habeas case based on ineffective assistance of counsel could be used in a subsequent habeas case also based on ineffective assistance. 2014 WL 4165364, at *26. Riva distinguished Bittaker because it involved an implied waiver, but did not address the holding in Lambright that a petitioner who impliedly waives the attorney-client privilege cannot subsequently expressly waive the privilege. See id. Furthermore, to the extent that either decision is in tension with Lambright, the Court notes that Lambright is controlling precedent.

### 2. Whether the disclosure at issue is a waiver under California state law (Fed. R. Evid. 502(c)(2))

The California Evidence Code specifies that "[t]here is no privilege under this article as to

4

a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship." Cal. Evid. Code § 958.  The code creates a narrow exception to the attorney-client privilege, rather than a waiver, in cases where section 958 applies, such as habeas proceedings involving ineffective assistance of counsel claims.  See People v Ledesma, 39 Cal. 4th 641, 694-95 (2006).  As the California Supreme Court noted in In re Miranda, "in filing his previous habeas corpus petition alleging ineffective assistance of counsel, petitioner *did not waive* the [attorney-client] privilege, he merely triggered an exception to it *that is not applicable in future proceedings*."  43 Cal. 4th at 555 (emphasis added) (citing Ledesma, 39 Cal. 4th at 695 ("under Evid. Code, § 958, 'the attorney-client privilege continues to apply for purposes of retrial after otherwise privileged matters have been disclosed in connection with habeas corpus proceedings'")); see also Scott v. Chappell, 547 F. App'x 815, 816 (9th Cir. 2013) (denying an appeal of a protective order in a death penalty habeas petition case that sealed documents and referenced a protective order in a prior habeas case based on ineffective assistance of counsel, noting that "[e]ven if some (or all) of the information had been disclosed in habeas corpus proceedings in the California courts, under the law of California it remained subject to the attorney-client privilege.").  Therefore, the disclosure of attorney-client communications in Plaintiff's habeas petition did not constitute a waiver of the attorney-client privilege under California law.

**B.    Implied Waiver**

In order to determine whether a party has impliedly waived the attorney-client privilege, the Court considers: (1) "whether the party is asserting the privilege as the result of some affirmative act, such as filing suit;" (2) "whether through this affirmative act, the asserting party puts the privileged information at issue;" and (3) "whether allowing the privilege would deny the opposing party access to information vital to its defense." United States v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999) (internal quotation marks and citations omitted).

Here, Defendants argue that by bringing this case, Plaintiff has impliedly waived the attorney-client privilege on all of these topics because Plaintiff's communications with Mr. Martin are at issue.

### 1. Claim of improper identification techniques

Any due process violation resulting from an improper identification technique occurs at trial when the evidence is introduced, not at the time of the improper identification. See Manson v. Brathwaite, 432 U.S. 98, 135 (1977) ("Unlike a warrantless search, a suggestive preindictment identification procedure does not in itself intrude upon a constitutionally protected interest." (citing U. S. ex rel. Kirby v. Sturges, 510 F.2d 397, 406 (7th Cir. 1975) ("The due process clause applies only to proceedings which result in a deprivation of life, liberty or property. The due process issue, therefore, does not arise until testimony about the showup—or perhaps obtained as a result of the showup—is offered at the criminal trial. If that evidence is unfairly prejudicial, the trial judge may have a constitutional obligation to exclude it, or possibly to mitigate its impact by an appropriate cautionary instruction to the jury. But if a constitutional violation results from a showup, it occurs in the courtroom, not in the police station."))). In this case, Plaintiff alleges that the Officer Defendants improperly brought Plaintiff to the home of Mary Cobbs while she was being interviewed by police. Ms. Cobbs subsequently identified Plaintiff in a lineup and this evidence was used at Plaintiff's criminal trial.[2] Defendants argue that Plaintiff put the fairness of the entire trial at issue by bringing this claim.

In response, Plaintiff argues that he raised the issue of a suggestive lineup at his criminal trial. However, although facts pertaining to the alleged improper identification were mentioned at the trial, Plaintiff cites no evidence that he raised the issue of the alleged impropriety of the identification. Indeed, Plaintiff specifically argued in his successful habeas petition that his counsel was ineffective for failing to raise this issue, among other shortcomings. (See Connolly Decl. Ex. A, Habeas Memo, at 15-16 (arguing that Plaintiff's attorney "failed to interview Mary

---

[2] See Cmplt. ¶¶ 125-26 ("Defendant Crenshaw brought Mr. Caldwell to Ms. Cobbs' front door while Defendant Gerrans was interviewing her about the murder, identified Mr. Caldwell by name and nickname, said Mr. Caldwell was the person he had been telling Defendant Gerrans about, and indicated that he was arresting Mr. Caldwell by requesting keys in order to put him in the police car. Defendant Gerrans ensured Ms. Cobbs understood that Defendant Crenshaw was arresting Mr. Caldwell in relation to this homicide by telling her that the officer at the door was working with him. When Ms. Cobbs still did not identify Mr. Caldwell – by stating that the man at the door was the shooter or by saying that she knew the man with the shotgun because he stayed next door to her and went by the nickname 'Twone' – Defendants Gerrans and Crowley returned to Ms. Cobbs and presented her with a photographic lineup or 'six-pack' that included Mr. Caldwell's photograph.").

6

Cobbs about her identification of Mr. Caldwell, *failed to object to the introduction of her suspicious and unreliable identification*, and did not even argue to the jury just how curious it was that she only identified Mr. Caldwell from a six-pack shortly after Officer Crenshaw brought him to her door").)[3]

Because the alleged due process violation at issue here occurred, if at all, when the allegedly improper evidence was introduced at Plaintiff's trial, Plaintiff has put the facts surrounding that identification and counsel's failure to object to that identification at issue by filing this lawsuit. Therefore, this claim puts at issue: what Plaintiff told Mr. Martin regarding the alleged suggestive show-up; and Mr. Martin's decision not to challenge Mary Cobb's identification. This information is vital to Defendants since they argue that the allegedly suggestive lineup did not occur. However, Plaintiff has not placed the fairness of the *entire trial* at issue. Rather, this claim is specific to the alleged improper identification.

### 2. Claim for fabrication of evidence

Plaintiff also alleges that his due process rights were violated when the Officer Defendants "focused their investigation exclusively on" Plaintiff, even after the Officer Defendants allegedly "knew or should have known that" he was innocent. (Cmplt. ¶¶ 145-46.) However, Plaintiff mistakenly relies on Sommer v. United States, 2011 U.S. Dist. Lexis 113755 (S.D. Cal. Oct. 3, 2011), a report and recommendation that was not adopted in relevant part by the district judge, to argue that this claim does not put any privileged communications at issue. The district judge's opinion, 2012 WL 28337 (S.D. Cal. Jan. 5, 2012), found that several allegations in the plaintiff's complaint did implicitly waive privilege. The Court noted that:

> Plaintiff has made affirmative allegations in the Complaint implicitly waiving privilege or immunity as follows: (1) Plaintiff alleges that Dr. Poklis, "a highly respected forensic pathologist and . . . leading expert in arsenic poisoning," told Defendants there was "no evidence that Todd Sommer died of arsenic poisoning" and that the test results were "false;" (2) Plaintiff alleges that her criminal

---

[3] Plaintiff cites his attorney's closing statement which merely indicates that Ms. Cobb may have overheard Plaintiff's name. (See Gross Decl. Ex. H at 759 ("And you can hear on the tape where an officer mentions the name. We got Maurice Caldwell.").) However, that evidence does not demonstrate that Plaintiff's attorney argued that Plaintiff was improperly brought to Ms. Cobb's door, resulting in an unreliable identification.

>defense attorney sought access to the additional tissue samples, and Defendant Gunn twice told Plaintiff's attorney that the samples "no longer existed," and "without notifying Mrs. Sommer or her attorney" that the samples had been located, Defendants had these additional samples tested. Plaintiff's allegations are relevant to whether Defendants continued their investigation despite the fact that they knew or should have known that Plaintiff was innocent. . . . Defendant Dumanis is entitled to discovery of communications between Plaintiff's criminal defense counsel and Dr. Poklis regarding whether Dr. Poklis told Defendants that there was "no evidence that Todd Sommer died of arsenic poisoning" and that the test results were "false." . . . . Defendant Dumanis is entitled to discovery of Plaintiff's attorney's notes regarding whether Defendant Gunn told Plaintiff's attorney that tissue samples "no longer exists" and whether Plaintiff's attorney was notified that additional tissue samples had been located.

Sommer, 2012 WL 28337, at *4.

As Defendants point out, Plaintiff makes similar allegations in this case:

>On October 17, 1990, Mr. Caldwell's trial attorney told Defendants Gerrans and Crowley of the identities of the true perpetrators: specifically that Marritte Funches fired the handgun, Henry Martin fired the shotgun, and Eric Brown punched Bobila. Defendants Gerrans and Crowley placed the three men in six-packs and showed them to the surviving victims and Mary Cobbs in the ensuing weeks, approximately six months after the murder, at which time no one could identify them. Defendants Gerrans and Crowley did nothing further to investigate these men. They never attempted to speak to them, and did not interview them repeatedly as they had Mr. Caldwell.

(Cmplt. ¶ 70.) Thus, since this claim seeks to fault Defendants for failing to investigate the alleged true perpetrators of the murder, Plaintiff has put the following topic at issue: Mr. Martin's decision not to investigate in any way the individuals that Plaintiff now claims perpetrated the crime. This information is vital to Defendants since it could potentially demonstrate that there was good cause for Defendants' alleged failure to investigate these individuals.

However, Sommer points out that a Devereaux claim is "not predicated on what [Plaintiff] or [his] attorney knew during the criminal proceeding." Sommer, 2012 WL 28337 at *4. Rather, the claim is based on Defendants' knowledge. See id. ("Plaintiff's allegations are relevant to whether Defendants continued their investigation despite the fact that they knew or should have known that Plaintiff was innocent."). Thus, this claim does not put any communications between Plaintiff and his attorney at issue, including "what Plaintiff told his attorney regarding his

8

involvement in the murder."[4]

## II. CONCLUSION

Defendants' motion is GRANTED in part and DENIED in part.  The Court GRANTS Defendants' motion to depose Mr. Martin with respect to the following topics: what Plaintiff told Mr. Martin regarding the alleged suggestive show-up;  Mr. Martin's decision not to challenge Mary Cobb's identification;  and Mr. Martin's decision not to investigate in any way the individuals that Plaintiff now claims perpetrated the crime.  The Court notes that Plaintiff may designate Mr. Craig's testimony on these topics as "confidential" pursuant to the protective order.  (Dkt. 45.)

**IT IS SO ORDERED.**

Dated: March 19, 2015

_____
Elizabeth D. Laporte
United States Magistrate Judge

---

[4] In his opposition, Plaintiff also argues that his allegations pertaining to Defendants' failure to disclose exculpatory evidence do not put any of Defendants' requested topics at issue.  Defendants do not contend otherwise.