UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE CALDWELL,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 12-cv-01892-DMR<br><br>**ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 422 |

Plaintiff Maurice Caldwell spent nearly 20 years in prison following his 1991 conviction for second degree murder. He was released from prison in 2010 after a state court granted his petition for a writ of habeas corpus on the basis of ineffective assistance of counsel. Following his release, Caldwell filed this lawsuit alleging that officers in the San Francisco Police Department ("SFPD") fabricated evidence against him during the murder investigation. Defendants Kitt Crenshaw, a former SFPD officer, and the City and County of San Francisco ("San Francisco") now move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Caldwell's second amended complaint ("SAC"). [Docket No. 422.] This motion is appropriate for determination without oral argument. Civil L.R. 7-1(b). For the following reasons, the motion is denied.

**I.   BACKGROUND**

   **A.   Factual Background**

Caldwell's factual allegations were previously described in detail in the Honorable Elizabeth D. Laporte's March 2, 2016 Order Granting Defendants' Motion for Summary Judgment (Docket No. 373) and the decision by the United States Court of Appeals for the Ninth Circuit on appeal. *Caldwell v. City & Cnty. of San Francisco*, 889 F.3d 1105 (9th Cir. 2018). The court summarizes the relevant allegations made by Caldwell.

On June 30, 1990, four men drove to the Alemany Projects in San Francisco to buy drugs.

1    A fight broke out between the buyers and sellers. Caldwell alleges that one of the sellers, Marritte

2    Funches, shot and killed Judy Acosta, one of the buyers. [Docket No. 189 (SAC) ¶¶ 20-22.]

3    Another man, Henry Martin, fired at the buyers as they attempted to flee in their car. *Id*. at ¶ 24.

4          SFPD inspectors Arthur Gerrans and James Crowley were assigned to investigate the

5    homicide. Gerrans went to the Alemany Projects to canvass the neighborhood and brought

6    Crenshaw, who was familiar with the area. *Id*. at ¶¶ 32, 34, 35. During his canvass, Gerrans

7    entered the home of witness Mary Cobbs. Cobbs lived next door to Caldwell, an African

8    American man who went by the nickname "Twone" or "Little Twone." *Id*. at ¶¶ 33, 39-41. While

9    Gerrans was interviewing Cobbs, Crenshaw encountered Caldwell. Caldwell and Crenshaw had a

10   history. In January 1990, Caldwell had filed a citizen complaint against Crenshaw with San

11   Francisco's Office of Citizen Complaints ("OCC") alleging that Crenshaw had assaulted him and

12   threatened to kill him. The OCC complaint was pending at the time of the homicide investigation.

13   *Id*. at ¶¶ 38, 42.

14         According to Caldwell, on the day of Gerrans's interview of Cobbs, Crenshaw "grabbed

15   Mr. Caldwell, pushed him up against the wall, handcuffed him, and dragged him up to Mary

16   Cobbs' front door." When Cobbs answered the door, Crenshaw asked to speak with Gerrans.

17   While Cobbs was within earshot, Crenshaw told Gerrans, "This is Maurice Caldwell, Twone, the

18   guy I've been telling you about. I need the keys to put him in the patrol car." After "displaying"

19   Caldwell to Cobbs, Gerrans "ensured Ms. Cobbs understood that Defendant Crenshaw was

20   arresting Mr. Caldwell [for Acosta's murder] by telling her that the officer at the door was

21   working with him." *Id*. at ¶¶ 43, 44. Crenshaw then placed Caldwell in a police car and

22   questioned him. Caldwell told Crenshaw that he was not involved in Acosta's murder. After

23   releasing Caldwell, Crenshaw fabricated a police report falsely representing that Caldwell had

24   admitted to being at the murder scene. *Id*. at ¶ 45.

25         During her interview with Gerrans, Cobbs never indicated that the man at the door with

26   Crenshaw (Caldwell) was the shooter. She also did not tell Gerrans that the man who lived next

27   door to her was involved in the shooting. Instead, she told Gerrans that the shooters "were not

28   from the area" and that she did not know their names or nicknames. *Id*. at ¶¶ 47-49. Despite

United States District Court
Northern District of California

Cobbs's statements, Gerrans, Crowley, and Crenshaw continued to focus their investigation on Caldwell and never questioned any other suspects. *Id*. at ¶¶ 51, 56.

Two weeks after the "show-up" of Caldwell at Cobbs's home, Gerrans and Crowley performed a photo lineup with Cobbs, who apparently picked Caldwell out of the photo lineup as one of the shooters. *Id*. at ¶¶ 57, 59-60. She also stated that she knew Caldwell by his nickname, "Twone," even though she had previously told Gerrans that she did not know the shooters' names or nicknames and had not told him that the shooter lived next door to her. *Id*. at ¶ 60.

Caldwell was arrested for Acosta's murder on September 21, 1990. Cobbs was the sole witness to identify Caldwell as a shooter at the preliminary hearing and trial. Caldwell alleges that her testimony was "completely unreliable" and "internally inconsistent and inconsistent with the physical evidence, undisputed facts, and testimony from the surviving victims." *Id*. at ¶¶ 66, 75. He further alleges that based on Cobbs's "false eyewitness testimony," which was "tainted by the actions of . . . Gerrans, Crowley, and Crenshaw," he was "wrongfully tried and convicted" of the crime. *Id*. at ¶ 80.

In December 2016, the San Francisco County Superior Court granted Caldwell's petition for a writ of habeas corpus. It concluded that Caldwell's counsel was ineffective for failing to investigate evidence of his innocence and that he had not received a fair trial. The court did not reach Caldwell's claims of false testimony and actual innocence. Caldwell was not re-tried and the charges against him were dismissed. Accordingly, he alleges, "he is an innocent man as a matter of law." *Id*. at ¶¶ 103-104.

Caldwell was released from custody on March 28, 2010 after spending nearly 20 years behind bars. *Id*. at ¶ 105. He filed this action on April 16, 2012.

**B.     Procedural History**

Caldwell asserted the following claims in the SAC, which is the operative complaint: 1) a 42 U.S.C. § 1983 claim for violation of Caldwell's Fifth and Fourteenth Amendment due process rights based on fabrication of evidence and using an impermissibly and unnecessarily suggestive identification procedure, against Crenshaw, Gerrans, and Crowley; 2) a section 1983 claim for conspiracy to interfere with Caldwell's civil rights, against Crenshaw, Gerrans, and Crowley; 3) a

3

claim for municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), against San Francisco; and 4) a section 1983 claim for failure to intervene against Crenshaw, Gerrans, and Crowley. Defendants filed an answer to the SAC on October 1, 2015. [Docket No. 206.]

On March 2, 2016, Judge Laporte granted Defendants' motion for summary judgment. [Docket No. 373 (Order on Summ. J.).] As to Gerrans and Crowley, the court held that Caldwell had failed to raise a triable issue as to whether either or both of them had deliberately fabricated evidence. *Id*. at 18-25. The court also found that Caldwell raised a triable issue as to whether Crenshaw manufactured the show-up at Cobbs's front door in order to manipulate her into identifying Caldwell, and deliberately fabricated a statement by Caldwell that placed him at the scene of the shooting. However, the court determined that Crenshaw was not liable because the prosecutor's decision to charge Caldwell was subject to a presumption of independence, and therefore broke the chain of causation between Crenshaw's alleged actions and Caldwell's harm. *Id*. at 14-17, 25-33. As the court granted summary judgment as to the individual defendants, it did not reach Defendants' motion as to the *Monell* claim. *Id*. at 34.

Caldwell appealed. On May 11, 2018, the Ninth Circuit affirmed as to Gerrans and Crowley, but reversed as to Crenshaw. The court found that the district court correctly held that there were disputes of fact as to whether Crenshaw fabricated evidence by manufacturing a show-up at Cobbs's front door with Caldwell, and whether Crenshaw brought Caldwell to Cobbs's door for the purpose of fabricating evidence against Caldwell. *Caldwell*, 889 F.3d at 1113-14. It also held that Caldwell had raised a dispute of fact regarding whether Crenshaw deliberately fabricated a statement from Caldwell and memorialized it in falsified notes. *Id*. at 1114-15.

As to the issue of causation, the Ninth Circuit noted that "[t]o establish causation, Caldwell must raise a triable issue that the fabricated evidence was the cause in fact and proximate cause of his injury." *Id*. at 1115 (citing *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017)). It further noted that in constitutional tort cases, "the '[f]iling of a criminal complaint immunizes investigating officers . . . because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that

4

time." *Id*. (quoting *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981)) (alteration and ellipses in original). The court concluded that "[a]ssuming without deciding that the presumption applies to [fabrication of evidence] claims . . . Caldwell sufficiently rebutted any presumption and has established a triable issue as to causation." *Id*. at 1116. Specifically, the court found that Caldwell had raised a dispute of fact as to whether San Francisco's prosecutor, Assistant District Attorney Alfred Giannini, relied on "the falsehood" of Cobbs's identification of Caldwell and Crenshaw's notes in making the decision to charge Caldwell. *Id*. at 1116-18. The Ninth Circuit also remanded with instructions to address Caldwell's *Monell* claim on remand. *Id*. at 1108 n.2. Therefore, the remaining claims are the due process claim against Crenshaw for fabrication of evidence and the *Monell* claim against San Francisco.

The Ninth Circuit's judgment took effect on March 19, 2019. Caldwell filed the Circuit Clerk's mandate on November 25, 2019. [Docket No. 404.] In light of Judge Laporte's retirement, the matter was reassigned to the undersigned. [Docket Nos. 405, 406.]

The court conducted a case management conference on April 29, 2020, at which Defendants Crenshaw and San Francisco requested permission to file a motion to dismiss Caldwell's remaining due process claim against Crenshaw. Without deciding the propriety of entertaining such a motion at this late stage, the court set filing deadlines for the proposed motion to dismiss as well as Defendants' motion for summary judgment as to the *Monell* claim. [*See* Docket Nos. 414, 415.] Defendants timely filed the instant motion.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (2007) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks

omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

### III. DISCUSSION

#### A. The Parties' Arguments

Defendants requested permission to move to dismiss Caldwell's remaining due process claim against Crenshaw on the basis of what they described as an intervening change in the law, starting with the Supreme Court's decision in *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017). In *Manuel*, the Court held that a claim challenging the constitutionality of a pretrial detention, including a detention based on fabricated evidence, arises under the Fourth Amendment's prohibition on unreasonable seizures. 137 S. Ct. at 917-19. Defendants argue that under *Manuel* and *McDonough v. Smith*, 139 S. Ct. 2149 (2019), Caldwell's claim against Crenshaw no longer arises under the Fourteenth Amendment's due process clause and instead is "properly understood as a Fourth Amendment pretrial detention claim." Mot. 1. According to Defendants, Caldwell's Fourth Amendment claim is time-barred because it accrued at the time of his arrest and charging.

In the alternative, Defendants argue that even if Caldwell brings a Fourteenth Amendment due process claim, he cannot state the claim because he has not alleged that the criminal proceedings terminated in his favor, which Defendants assert is now required under *McDonough*. Mot. 8-11.

In his opposition, Caldwell clarifies that he does not bring a Fourth Amendment claim based on his pretrial detention. Instead, his claim is that Crenshaw fabricated evidence against him which "caused him to be wrongfully tried, convicted and to serve over twenty years in prison in violation of his Fourteenth Amendment due process right not to be prosecuted based on evidence fabricated by the government and his due process right to a fair trial." Opp'n 6-8. He

6

1  disputes that he must allege that the criminal proceedings terminated in his favor in order to state a

2  Fourteenth Amendment due process claim.

3  On reply, Defendants acknowledge Caldwell's clarification that he does not bring a claim

4  based on his pretrial detention. Accordingly, they withdraw their argument that Caldwell's claim

5  against Crenshaw is time-barred. Reply 1, 6.

6  Therefore, the sole issue before the court is whether Caldwell is required to allege that the

7  criminal proceedings terminated in his favor in order to state his Fourteenth Amendment due

8  process claim. *See* Reply 3-6.[1]

### B.  Analysis

"[T]here is a clearly established constitutional due process right not to be subject to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2018). To prevail on a fabrication of evidence claim, "a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer*, 857 F.3d at 798 (citation omitted).

Defendants argue that under *McDonough*, a plaintiff must establish the favorable termination of the underlying criminal case in order to bring a fabricated evidence claim. Defendants' assertion contorts *McDonough* and is meritless, particularly in light of the Ninth Circuit's subsequent decision in *Roberts v. City of Fairbanks*, 947 F.3d 1191, 1201 n.11 (9th Cir. 2020).

To start, *McDonough* did not address whether a plaintiff must show favorable termination of a criminal case in order to prevail on a constitutional claim challenging the use of fabricated evidence in that case. Instead, *McDonough* considered the question of when the statute of

---

[1] Defendants had to seek permission to file this motion because the deadline for a Rule 12(b) motion has long since passed. The court notes that this remaining argument goes beyond the scope of what defense counsel sought leave to file. Counsel asked for the opportunity to brief the *Manuel* issue discussed above. Counsel did not ask file the court for permission to raise the argument that Caldwell fails to state a Fourteenth Amendment claim based on the favorable termination rule. The court will consider the argument in the interest of justice but admonishes counsel to refrain from taking liberties when making representations to the court.

limitations begins to run on a section 1983 fabricated evidence claim. The plaintiff in *McDonough* brought a fabricated evidence claim almost three years after his acquittal on forgery charges. 139 S. Ct. at 2154. The district court dismissed the claim as untimely under the applicable three-year statute of limitations. The Second Circuit affirmed, finding that the claim did not accrue upon acquittal, but rather had accrued earlier when plaintiff could show "that the defendant's knowing use of the fabricated evidence caused him some deprivation of liberty." *Id*.

The Supreme Court reversed. In deciding the accrual question, the Court analogized fabricated evidence claims to malicious prosecution claims, finding that "[a]t bottom, both claims challenge the integrity of criminal prosecutions undertaken 'pursuant to legal process.'" *Id*. at 2156 (citing *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). The Court recognized that malicious prosecution claims "accrue[ ] only once the underlying criminal proceedings have resolved in the plaintiff's favor." *Id*. Relying on its decision in *Heck*, and noting that it was "follow[ing] the analogy [to malicious prosecution claims] where it leads," the Court concluded that the plaintiff "could not bring his fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution." *Id*. *McDonough* discussed *Heck* at length. It explained that in *Heck*, the Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a section 1983 plaintiff must prove that his or her conviction had been invalidated. *Id*. at 2157 (quoting *Heck*, 512 U.S. at 486-87). A plaintiff may do so by showing that the conviction "has been [1] reversed on direct appeal, [2] expunged by executive order, [3] declared invalid by a state tribunal authorized to make such determination, or [4] called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87.[2]

*McDonough* reasoned that "malicious prosecution's favorable-termination requirement is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil judgments" and "avoids allowing collateral attacks on criminal judgment through civil litigation." *McDonough*, 139 S. Ct. at 2157

---

[2] In this case, Defendants expressly concede that Caldwell satisfies *Heck*'s third prong. Reply 3.

8

(citations omitted). The Court then concluded that "[b]ecause a civil claim such as McDonough's, asserting that fabricated evidence was used to pursue a criminal judgment, implicates the same concerns, it makes sense to adopt the same rule." *Id.* Therefore, a statute of limitations on a fabricated evidence claim begins to run "once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*[.]" *Id.* at 2158 (citing *Heck*, 512 U.S. at 486-87).

Here, Defendants distort *McDonough* by asserting that it imposed a "favorable termination" requirement for fabricated evidence claims that is identical to the requirement for malicious prosecution claims. *See* Mot. 10 (citing *Mills v. City of Covina*, 921 F.3d 1161, 1170-71 (9th Cir. 2019) (malicious prosecution claim requires a termination reflecting plaintiff's innocence)). According to Defendants, Caldwell cannot allege that the criminal proceedings terminated in his favor as he was never acquitted or declared innocent of the charges. Defendants are wrong. *McDonough* made no such ruling. Instead, it decided the question of when a claim for fabricated evidence accrues; it noted that it was not deciding the "contours" of such a claim, and it did not hold that such a claim is identical to a malicious prosecution claim. 139 S. Ct. at 2155 n.2.

In fact, Defendants' interpretation of *McDonough* contradicts the express ruling in *McDonough* that a fabricated evidence claim does not accrue until "the criminal proceeding has ended in the defendant's favor, *or a resulting conviction has been invalidated within the meaning of Heck*[.]" 139 S. Ct. at 2158 (citing *Heck*, 512 U.S. at 486-87) (emphasis added). In a recent opinion, the Ninth Circuit examined this exact language and held that "[b]y posing the favorable-termination rule and invalidation under *Heck* disjunctively," "*McDonough* firmly undermines the . . . insinuation that they are coterminous." *Roberts*, 947 F.3d at 1201 n.11. Here, it is undisputed that Caldwell's conviction was "invalidated within the meaning of *Heck*" because it was "declared invalid by a state tribunal authorized to make such determination. *See Heck*, 512 U.S. at 486-87; Opp'n 14; Reply 3.

*Roberts* is directly on point here. It held that the favorable termination rule applicable to malicious prosecution claims is distinct from the "four means of favorable termination" articulated in *Heck*. In *Roberts*, the Ninth Circuit addressed the question of "whether § 1983 plaintiffs may

9

recover damages if the convictions underlying their claims were vacated pursuant to a settlement agreement." 947 F.3d at 1193. The settlement agreement provided that the parties would ask a court to vacate the plaintiffs' convictions, and specifically recognized that "[t]he parties have not reached agreement as to [the plaintiffs'] actual guilt or innocence." *Id*. (first alteration in original). After a state court vacated the plaintiffs' convictions and they were released from prison, the plaintiffs filed a section 1983 action alleging deprivation of liberty, malicious prosecution, and several other claims. *Id*. at 1196. The district court dismissed their claims as barred by *Heck*, holding that the "vacatur of convictions pursuant to a settlement agreement was insufficient to render the convictions invalid[.]" *Id*.

The Ninth Circuit reversed, holding that the *Heck* bar was inapplicable because the plaintiffs' convictions were vacated and the underlying indictments had been dismissed. The court ruled that in the absence of a criminal judgment or charges pending against the plaintiffs, *Heck* did not apply as a bar to the subsequent civil rights action. *Id*. at 1198. The defendants argued that even though the convictions were vacated, they had not been "declared invalid" as required by *Heck* because the settlement did not establish the plaintiffs' innocence and thus did not meet the "favorable-termination" rule for a malicious prosecution claim. *Id*. at 1198, 1201. The Ninth Circuit rejected this argument as improperly conflating "the favorable-termination rule in the tort of malicious prosecution with *Heck*'s four distinct means of favorable termination." *Id*. at 1201. It expressly found that "*Heck*'s favorable-termination requirement is distinct from the favorable-termination element of a malicious-prosecution claim." *Id*. According to *Roberts*, the argument forwarded by the defense (which is the same argument asserted by Defendants in this case) "contravenes the plain language of *Heck*" because convictions can be invalidated on the grounds set forth in *Heck* without "indicat[ing] the innocence of the accused," as is required for a malicious prosecution claim. *Id*. at 1201-02. It noted that "[c]onvictions 'called into question by a federal court's issuance of a writ of habeas corpus' routinely terminate in a manner that could not sustain a malicious-prosecution action." *Id*. at 1202.[3]

---

[3] Defendants acknowledge that in *Roberts*, the Ninth Circuit clearly stated that the favorable termination element of a malicious prosecution claims should not be conflated with the favorable

In sum, *Roberts* considered and rejected the exact position taken by Defendants here. *See id.* at 1202-03 ("the law of our circuit is *not* that *Heck* bars a § 1983 suit unless the plaintiff could succeed in a malicious-prosecution action . . ." (emphasis in original)). Accordingly, Caldwell does not have to plead that the underlying criminal proceedings terminated in his favor in order to proceed with his section 1983 due process claim against Crenshaw.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Caldwell's section 1983 due process claim against Crenshaw is denied.

**IT IS SO ORDERED.**

Dated: October 26, 2020



Donna M. Ryu
United States Magistrate Judge

---

termination requirement of *Heck*, and that *Heck* does not bar a 1983 suit unless the plaintiff could succeed in a malicious prosecution action. But Defendants go on from there to pronounce that "[t]he converse . . . is also true—a plaintiff cannot succeed in a malicious prosecution or fabrication of evidence action merely by overcoming the Heck bar." Reply 4. Defendants cite two cases which purportedly support their pronouncement, but neither do. *Mills v. City of Covina*, 921 F.3d 1161, 1170-71 (9th Cir. 2019) discusses the elements of a malicious prosecution claim, including the favorable termination element, but says nothing about fabrication of evidence claims. In *Bradford v. Scherschligt*, 803 F.3d 382, 386-89 (9th Cir. 2015), the court held that a *Devereaux* claim for fabrication of evidence accrues when the conviction or sentence is invalidated, but in the retrial context, it accrues on the date the plaintiff is acquitted in a retrial. *Bradford* does not hold that a fabrication of evidence claim requires a favorable termination.